**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JANIS BAILEY,

       Plaintiff,

                                    CASE NO. 3:11-cv-723-TEM

vs.

MICHAEL J. ASTRUE
Commissioner of Social Security,

       Defendant.

_____

## ORDER AND OPINION

       This matter is before the Court on Plaintiff's complaint (Doc. #1) seeking review of the final decision of the Commissioner of the Social Security Administration (the Commissioner) denying Plaintiff's claim for disability insurance benefits (DIB). 42 U.S.C. § 405(g). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #16, Plaintiff's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #17, Defendant's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated October 28, 2011 (Doc. #13). The Commissioner has filed the transcript of the underlying administrative proceedings and evidentiary record (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the Commissioner's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

In the instant action Plaintiff filed an application for DIB on March 9, 2009, which alleges onset of disability on August 30, 2008 (Tr. 150-151).  Plaintiff alleged an inability to work due to double vision in her right eye, deafness in her right ear, high blood pressure affects, dizziness, and stroke symptoms (Tr. 183).  In the undated Disability Report- Adult, Plaintiff stated because of her conditions and other reasons she was reduced to part-time work and then was laid off, which is why she stopped working.  *Id.*  After her application was denied initially and upon reconsideration (Tr. 70-77), Plaintiff requested a hearing, which was held on December 6, 2010 in Jacksonville, Florida before Administrative Law Judge (ALJ) Aaron M. Morgan (Tr. 27-64).  Plaintiff appeared and testified at the hearing, as did vocational expert (VE) Donna P. Mancini.  *See id.*

Plaintiff was represented by Ms. Jessica C. Dumas, Esq., at the administrative hearing.  *Id.*  On January 3, 2011, ALJ Morgan issued a hearing decision denying Plaintiff's claim (Tr. 13-22).  The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 1-3).

Plaintiff's current counsel of record, Ms. Chantal Harrington, Esq., filed the instant action in federal court on July 21, 2011 (Doc. #1).  The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION AND THE STANDARD OF REVIEW

A plaintiff may be entitled to disability benefits when he or she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505.[1]  The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits.  *See* 20 C.F.R. § 404.1520; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  Plaintiff bears the burden of persuasion through Step 4, while at Step 5, the burden temporarily shifts to the Commissioner to establish the existence of other jobs in the economy that the plaintiff can perform.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

The ALJ's decision dated January 3, 2011 denied Plaintiff's claim (Tr. 13-22).  At Step 1, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date (Tr. 18).  ALJ Morgan found Plaintiff's date last insured for DIB to be September 30, 2011 (Tr. 18, 213)[2].  At Step 2, the ALJ found Plaintiff had the severe impairments of status post two cerebrovascular accidents (CVAs) with residual visual and hearing impairment on the right side (Tr. 18).  At Step 3, the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr.19).  The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of work at all exertional levels with the following limitations: limited to occasional near

---

[1]All references to 20 C.F.R. shall be to the 2012 edition, unless otherwise noted.

[2]There is some discrepancy within the record regarding this date. The ALJ (Tr. 18) and Disability Report dated 9/16/2009 (Tr. 213) state the date last insured is 9/30/2011; however, the Application Summary for Disability Insurance Benefits dated 3/9/2009 (Tr. 150-152) states the date last insured is 09/12.  This discrepancy, however, has no bearing on the Court's ruling.

and far acuity, depth perception, accommodation and field of vision; no hearing in her right ear; avoid moderate exposure to noise and hazards such a machinery and heights (Tr. 19-20).  At Step 4, the ALJ determined that Plaintiff was capable of performing past relevant work as a customer service clerk (sedentary, skilled), a receptionist (sedentary, semiskilled), a sales clerk (light, semiskilled), or a dispatcher (sedentary, semiskilled) (Tr. 21).  Thus, the ALJ found  Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 22).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  The Commissioner's findings of facts are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance-- in other words, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).

4

As in all Social Security disability cases, the plaintiff bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his or her impairments.  *Yukert*, 482 U.S. at 146 n.5; *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he [or she] furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  It is a plaintiff's burden to provide the relevant medical and other evidence that he or she believes will prove the existence of disabling physical or mental functional limitations.  20 C.F.R. §§ 404.704, 404.1512(a).

The Commissioner must apply the correct law and demonstrate that he has done so.  While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled.  *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

## BACKGROUND FACTS

The record reflects Plaintiff was born September 15, 1953 (Tr. 31, 150) and was fifty-seven (57) years old at the time of the administrative hearing.  Plaintiff testified she completed three (3) years of college education (Tr. 32).  Plaintiff has past relevant work as a receptionist, designer, customer service representative, sales person and dispatcher (Tr.

5

32-35, 172, 184, 244).  The pertinent portions of Plaintiff's medical history are summarized

below.

## MEDICAL HISTORY

**Dr. Scott Silliman, M.D., and Dr. Donna Hill, M.D., at Shands Jacksonville Neurology Clinic.**

From approximately January 31, 2007 to August 25, 2010, Drs. Silliman and Hill

treated Plaintiff for various complaints at Shands Jacksonville in the Neurology Clinic.

Initially Plaintiff complained to Dr. Silliman of spinning, dizziness and nausea (Tr. 257).  Dr.

Silliman ordered an MRI on January 31, 2007 (Tr. 257).   The MRI results showed there

were bilateral cerebellar infarcts unchanged from a prior CT Scan conducted on Plaintiff

in 2000 (Tr. 255, 256).   Dr. Silliman suspected her episodic, stereotyped events were

labyrinthine[3] (Tr. 256).  At Dr. Silliman's request, Plaintiff was first examined by Dr. Donna

Hill on April 18, 2007 (Tr. 252).   At that time, Plaintiff complained of binocular vertical

diplopia[4] in primary gaze (Tr. 253).   Dr. Hill noted that Plaintiff's visual acuity, without

correction, was 20/20, both eyes.   *Ia.*  Dr. Hill also noted that confrontational visual fields

were full in both eyes.   *Id.*  Dr. Hill referred Plaintiff to  undergo a MRI of the orbits and a

---

[3]Labyrinthine describes a condition as related to the internal or inner ear.  *See* http://www.medilexicon.com/medicaldictionary (search labyrinthine & labyrinth) (last visited September 18, 2012).  The Court refers to public websites for informational purposes only. The Court accepts no responsibility for and does not endorse any content found at such websites.

[4]Binocular is defined as adapted to the use of both eyes.  Diplopia is defined as a condition in which a single object is perceived as two objects.  *See* http://www.medilexicon.com/medicaldictionary (search binocular & diplopia) (last visited September 18, 2012).  Thus, Plaintiff complained of double-vision to Dr. Hill in April 2007.

Goldmann visual field test.[5]   *Id.*

On May 29, 2007, Dr. Hill determined the Goldmann visual fields were full in both eyes (Tr. 250).  Dr. Hill noted that Plaintiff had consulted with a "Dr. Chalam" to discuss a surgical option to address Plaintiff's complaint, but Dr. Chalam did not believe that surgery would be helpful, as Plaintiff does not always have diplopia in primary gaze (Tr. 250-51). Dr. Hill suggested the Plaintiff could try prism glasses, specifically to wear when she is fatigued (Tr. 251).

Plaintiff followed-up with Dr. Silliman on July 06, 2007 (Tr. 249).  Dr. Silliman noted that Plaintiff's episodes of vertigo were now rare and were likely labyrinthine.  *Id.*  Plaintiff's visits to Shands Jacksonville from July 06, 2007 to August 25, 2010 were primarily made with Dr. Hasan Riaz, M.D., and Dr. Ghania Masri, M.D.  These visits consisted of routine mammograms, with negative results, and routine cholesterol checks (Tr. 357-368).   On May 19, 2010 Plaintiff visited for a routine check up (Tr. 370).  At this time, Plaintiff reported no visual problem and denied "ear pain, tinnitus, vertigo, sinus pressure" (Tr. 371).

**Choisser Medical Group**

At the Commissioner's request, Plaintiff was evaluated by Dr. William Choisser, M.D., at Choisser Medical Group on June 18, 2009 (Tr. 295-99).  Dr. Choisser noted

---

[5]The Goldmann's visual field test is "[a] type of vision test in which progressively dimmer lights are moved from the peripheral vision into the central vision, using an instrument that allows the point at which the light is first seen to be accurately mapped. In this test, a trained perimetrist moves the stimulus; stimulus brightness is held constant. The limits of the visual field are mapped to lights of different sizes and brightness. Also known as Goldmann kinetic perimetry."  See http://webeye.ophth.uiowa.edu/glossary/ Ophthalmology-3/G/Goldmann-visual-field-39 (last visited September 18, 2012).

Plaintiff had suffered from strokes in 1985 and 1992. *Id.* Dr. Choisser determined Plaintiff's visual acuity, without corrective lenses, was 20/25 on the right and 20/30 on the left. *Id.* Dr. Choisser noted that Plaintiff's Romberg[6] was somewhat unsteady, but she did not fall, and all ranges of motion were within normal range (Tr. 296-299).

At the request of Plaintiff's counsel, Plaintiff was evaluated by Dr. Lily S. Rocha, M.D., at Choisser Medical Group on November 5, 2010[7] (Tr. 374-79). Dr. Rocha noted that Plaintiff had suffered two previous cardiovascular accidents (CVAs), or strokes, and now had "some compromise of the 12th cranial nerve and definitely some weakness of the superior and inferior oblique muscles of the right eye," plus "no full [range of motion] of the right orbit looking up or down" (Tr. 375). Dr. Rocha concluded Plaintiff had "CVAX2 with severe visual impairment, hearing impairment, and vertigo." *Id.* Dr. Rocha also stated Plaintiff's depression/anxiety further aggravated her vertigo. *Id.* Dr. Rocha completed a Vision Impairment Physical Residual Functional Capacity Questionnaire in which she found that Plaintiff's visual acuity after best correction in the right eye was 20/40 and 20/50 in the left eye (Tr. 377). However, in an apparent contradiction, in her written notes prepared the same day, Dr. Rocha stated that her physical examination of Plaintiff revealed Plaintiff's visual acuity *"without corrective lenses"* was 20/40 in the right eye and 20/50 in the left eye

---

[6]Romberg sign is a "clinical test used to evaluate dysequilibrium," or a patient's sense of balance. *See* http://medical-dictionary.thefreedictionary.com/Romberg's+test (last visited September 18, 2012).

[7]This evaluation took place ten (10) days prior to the originally scheduled Hearing date, although the Hearing date was subsequently changed to December 3, 2010.

(Tr. 374).[8]  Dr. Rocha further stated Plaintiff's contraction of peripheral visual fields was limited bilaterally to 1/5[9] and Plaintiff can never perform work activities involving depth perception (Tr. 377).  Dr. Rocha diagnosed Plaintiff with vertigo that compromises her safety and makes crouching and squatting awkward (Tr. 378-379).  Dr. Rocha also found Plaintiff could occasionally lift less than ten (10) pounds, rarely lift ten (10) pounds, and never lift or carry twenty (20) nor fifty (50) pounds in a competitive work situation (Tr. 378).

**Knox's Group, Inc.**

Peter Knox, M.Ed., Psy.D., conducted a mental status examination of Plaintiff on August 5, 2009 (Tr. 301).  Dr. Knox's analysis of Plaintiff's functional ability revealed that Plaintiff admitted to being able to lift fifty (50) pounds, and she has no trouble with cooking, cleaning or doing her own shopping (Tr. 305).  Additionally, Dr. Knox noted there was no significant impairment in the area of work related mental activities.  *Id.*  Dr. Knox also noted there was no significant issues in the area of concentration and persistence.  *Id.*  Dr. Knox diagnosed Plaintiff with Adjustment Disorder, Hearing and Eyesight Disorder, Living/Occupation Issues and assigned a GAF of sixty-five (65), both current and past[10] (Tr.

---

[8]Giving Dr. Rocha the benefit of the doubt, the Court can see that it would have been easy to inaccurately record Plaintiff's uncorrected visual acuity on the RFC form, when the question presented a request for corrected visual acuity (*see* Tr. 377).  Although this may represent a simple scrivener's error, such contradictory findings would provide another basis to give Dr. Rocha's report less weight.

[9]Dr. Rocha stated normal peripheral visual field is 5/5, patient is 1/5.

[10]GAF refers to the Global Assessment of Functioning, which is rated in respect to psychological, social, and occupational functioning, not impairment for physical limitations (Tr. 306). The Global Assessment of Functioning Scale (GAF) was designed by mental health clinicians to rate the psychological, social and occupational functioning of an individual on a mental health scale of 0-100.  A GAF score of 41-50 describes "serious symptoms" and includes "serious impairment in the social, occupational or school

306).

**Psychiatric Review Techniques**

At the request of the Social Security Administration, the State Agency had two medical sources review Plaintiff's file and assess her mental status.

A Psychiatric Review Technique form (PRTF) was completed by Lauriann Sandrik, Psy. D., on August 14, 2009 (Tr. 316-29).  The review relied, in part, on the medical notes made by Dr. Chossier during his examination of Plaintiff on June 18, 2009 and the evaluation by Dr. Knox on August 5, 2009 (*see* Tr. 328).  Plaintiff was found to have an adjustment disorder, but the medical disposition of the review revealed no severe impairments (Tr. 316, 319).  Dr. Sandrik determined Plaintiff had no degree of limitation in any categories, and Plaintiff's mental condition was not severe (Tr. 326, 328).

Dr. Angeles Alvarez-Mullin, M.D., subsequently completed a PRTF on January 7, 2010 (Tr. 338-51).  Dr. Alvarez-Mullin determined Plaintiff had an adjustment disorder with depressed mood, but the medical disposition of the review revealed no severe impairments (Tr. 338, 341).  Dr. Alvarez-Mullin determined Plaintiff had a mild degree of limitation in the categories of activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace; however, he noted there is no indication of severe mental impairment (Tr. 348, 350).

---

functioning."  A GAF score of 51-60 describes "moderate symptoms" and includes only moderate difficulty in functioning.  A GAF score of 61-70 indicates "some mild symptoms," but generally functioning "pretty well, has some meaningful interpersonal relationships." A GAF score of 71-80 indicates that if symptoms are present, they are transient and expectable reactions to psycho-social stressors with no more than slight impairment in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, DSM-IV, 32-34 (4th ed., American Psychiatric Assoc. 2000).

**Physical Residual Functional Capacity Assessments**

At the request of the Social Security Administration, the State Agency had two individuals review Plaintiff's records and assess her physical capacity.

Plaintiff was assessed for her residual functional capacity by Ann Maxey, a single decisionmaker, on August 20, 2009 (Tr. 308-15).  The assessment relied in part on the medical notes made by Dr. Chossier during his examination of Plaintiff on June 18, 2009 to support the following conclusions: Plaintiff can occasionally lift twenty (20) pounds, Plaintiff can frequently lift ten (10) pounds, Plaintiff can stand and/or walk for a total of about six (6) to eight (8) hours per workday, and Plaintiff can push and/or pull without limitation (Tr. 309).  Additionally, the assessment found Plaintiff requires occasional limitations with climbing, balancing, and stooping; however, Plaintiff can kneel, crouch, and crawl frequently (Tr. 310).  Furthermore, the assessment concluded Plaintiff has no limitations as to near acuity, far acuity, accommodation, color vision or field of vision, but the box 'limited' was checked for depth perception based on double vision, without further detail (Tr. 311).

Plaintiff was subsequently assessed for her residual functional capacity by Edward Holifield, M.D., on October 22, 2009 (Tr. 330-37).  Dr. Holifield made the following determinations: Plaintiff can occasionally lift fifty (50) pounds, Plaintiff can frequently lift twenty (20) pounds, Plaintiff can stand and/or walk for a total of about six (6) to eight (8) hours per workday, and Plaintiff can push and/or pull without limitation (Tr. 331).  Additionally, the assessment concluded Plaintiff has no other limitations of any kind, with the exception to avoid concentrated exposure to hazards (Tr. 332-334).  Dr. Holifield noted Plaintiff's symptoms/limitations are partially credible (Tr. 335).

**ANALYSIS**

Plaintiff raises two main issues on appeal. First, Plaintiff alleges the ALJ failed to evaluate whether Plaintiff met or equaled the requirements of Listing 2.03 and instead only evaluated whether Plaintiff's condition met or equaled the requirements of Listing 2.02. Plaintiff's Brief at 7-8.  Second, Plaintiff argues the ALJ failed to credit the opinions of Dr. Choisser and Dr. Rocha, or at a minimum, failed to provide a cogent explanation for why he was not crediting evidence that contradicted his residual functional capacity assessment.  Plaintiff's Brief at 14-15.  Contained within this second alleged issue of error is Plaintiff's argument that the ALJ failed to develop a full and fair record.

Defendant argues the ALJ's decision is supported by substantial evidence.  More specifically, Defendant contends Plaintiff failed to carry her burden of establishing that her condition met a Listing, and argues the ALJ was supported by substantial evidence in his consideration of the medical opinions and in his formulation of Plaintiff's RFC.  Defendant's Brief at 3, 10.

**I. Plaintiff's Visual Impairments**

Plaintiff alleges the medical evidence in the record establishes Plaintiff's visual impairments meets or equals Listing 2.03, which provides:

> Listing 2.03 *Contraction of peripheral visual fields in the better eye.*
> With:
> A. To 10 degrees or less from the point of fixation; or
> B. So the widest diameter subtends an angle no greater than 20 degrees; or
> C. To 20 percent or less visual field efficiency.

20 C.F.R. Pt. 404, Subpt. P.App. 1, § 2.03.

As previously noted, Plaintiff bears the heavy burden of proving she is disabled.  20

C.F.R. § 404.1512(a); *Lucas v. Sullivan*, 918 F.2d 1567, 1571 (11th Cir. 1990). A claimant may satisfy the burden of proving disability if he or she shows that the claimed impairment or impairments meet or equal a listed impairment. *Id.* The evidentiary standards for presumptive disability under the Listings are stricter than for cases that proceed to other steps in the sequential evaluation process because the Listings represent an automatic screening based on medical findings rather than an individual judgment based on all relevant factors in a claimant's claim. *See* 20 C.F.R. § 404.1520(d). As the U.S. Supreme Court stated in the case of *Sullivan v. Zebley*, "For a claimant to show that his impairment matches a listing, *it must meet all of the specified medical criteria*. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." 493 U.S. 521, 530 (1990) (emphasis added).

Generally, an ALJ's statement that he or she carefully considered the entire record is sufficient to show that he or she has done so. *Jones v. Dept of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (citing *Wheeler v. Heckler*, 784 F.2d 1073, 1076 (11th Cir. 1986)). *But see Jamison v. Bowen*, 814 F.2d 585, 589 (11th Cir. 1987) (holding ALJ's statement that he considered the entire record communicates only that the ALJ reviewed the entire record; it does not answer the question of whether his "careful consideration" included a consideration of the plaintiff's entire medical condition). However, the Commissioner is not required to mechanically recite all evidence leading to his determination, and when the ALJ reaches steps four and five in the sequential evaluation analysis, it can be implicitly found that Plaintiff did not meet any of the Listings. *See Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (stating there may be an implied finding that a claimant does not meet a listing).

13

On this issue, the Court agrees with Defendant that Plaintiff did not meet her burden of providing proof that she met Listing 2.03, as is discussed in more detail below.  Because Plaintiff has also asserted the ALJ improperly considered the opinion evidence from two examining physicians, one of which she claims supports her contention that she meets Listing 2.03, the Court now turns its attention to those opinions and the ALJ's consideration thereof.

## II. Examining Physicians Opinions

"Absent good cause, the opinions of treating or examining physicians must be accorded substantial or considerable weight." *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp.2d 1340, 1367 (M.D. Fla. 2009) *citing Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  An examining physician is a "medical source who has examined [Plaintiff] but does not have, or did not have, an ongoing treatment relationship with [Plaintiff]."  20 C.F.R. § 404.1502.  The opinion of an examining physician is generally given less weight than a treating physician but more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527.  However, for both a non-examining medical expert and an examining medical source, the ALJ should consider the specialty and expertise of the individual, the evidence in the case record that supports the testimony, the explanation for the opinion, and any other factors relevant to the weight of opinion evidence.  *Id.*  The ALJ may reject the opinion of any medical source when it is inconsistent with the evidence.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983);  *see also Patterson v. Chater*, 983 F. Supp. 1410, 1415 (M.D. Fla. 1997) (the court determined the physician was an examining physician when he saw plaintiff once in four years and, thus, the ALJ was justified in

14

rejecting his opinion when it was inconsistent with the record).

Here, Plaintiff contends the ALJ did not properly consider two medical evaluations in the record.  Plaintiff first points to the examination conducted by Dr. Choisser on June 18, 2009.  Plaintiff criticizes the ALJ did not credit, or state with particularity the weight accorded to Dr. Choisser's report.  Plaintiff's Brief at 16-17.  Plaintiff takes issue with the ALJ's consideration of Dr. Choisser's report because the ALJ found no exertional limitations on Plaintiff's ability to stand/walk for extended periods of time, despite Dr. Choisser's finding Plaintiff had balance issues.  *Id.*

In his consultative examination Dr. Choisser determined Plaintiff's visual acuity, without corrective lenses, was right 20/25, left 20/30 (Tr. 295).  The ALJ specifically cites Dr. Choisser's opinion, stating "claimant's visual acuity is 20/25 without correction" and devotes an entire paragraph to Dr. Choisser's findings (*see* Tr.  18-19, 21).  Dr. Choisser did not conduct a visual field study, but he did find Plaintiff had a full range of motion in all exertional aspects (Tr. 295-299).  Dr. Choisser did not offer his opinion on Plaintiff's ability to perform specific physical functions, such as standing, walking, and lifting.  Thus, there was no opinion from Dr. Choisser for the ALJ to weigh regarding Plaintiff's physical limitations.  Dr. Choisser's report noted Plaintiff's gait was normal, she was able to walk without assistance, she was able to squat to the floor and stand up, and she had a "somewhat unsteady" Romberg (Tr. 296).  Dr. Choisser also noted Plaintiff had normal grip strength and upper arm strength.  *Id.*

The ALJ's finding Plaintiff had no exertional limitations is not inconsistent with Dr. Choisser's examination, and it is consistent with other evidence in the record, including Plaintiff's statements to Dr. Knox that she could lift fifty pounds and Dr. Holifield's finding

15

from his review of the record evidence that Plaintiff could occasionally lift fifty (50) pounds and frequently lift twenty-five (25) pounds (*see* Tr. 21, 305, 331). As noted above, ALJ Morgan gave explicit consideration of Dr. Choisser's opinion in the decision. The Court's independent review of the record confirms the ALJ accurately portrayed what Dr. Choisser had to say. It is obvious the ALJ gave due consideration to the opinion evidence expressed within Dr. Choisser's report. As an examining source, Dr. Choisser's opinion was not entitled to differential treatment, but was to be considered in conjunction with the other evidence of record. It is clear to the Court that the ALJ evaluated the evidence from Dr. Choisser as an examining medical source and weighed the evidence in accordance with the requirements of the Regulations. *See* 20 C.F.R. § 404.1527(d). Thus, the ALJ did not err in failing to state with specificity the weight afforded to this evidence.

Plaintiff additionally contends the ALJ failed to credit Dr. Rocha's opinion because the ALJ concluded Plaintiff's condition did not meet or equal a Listing. Plaintiff's Brief at 19. Plaintiff argues the ALJ did not properly explain the amount of weight accorded to Dr. Rocha's opinion, and the ALJ should have ordered additional testing. *Id.* The Court disagrees.

Plaintiff correctly notes that Dr. Rocha was an examining physician, as was Dr. Choisser. Plaintiff's Brief at 17-19. Dr. Rocha's opinion evidence must be considered along with the other evidence of record, under the same standard of review as afforded Dr. Choisser. *See* 20 C.F.R. § 404.1527. In this case, it is clearly evident the ALJ considered Dr. Rocha's report when making his decision (Tr. 21). The ALJ stated he "gives some weight to Dr. Rocha's consultative exam and impairment questionnaire . . . , but there are no treatment notes to support the extent of disability she found" (Tr. 21). Plaintiff takes

16

issue with the determination to give Dr. Rocha's opinion some weight and the finding that

there are not treatment notes supporting the extent of disability Dr. Rocha found in Plaintiff.

Plaintiff's Brief at 17-19.  Plaintiff misstates the record, however, by asserting the ALJ "did

not credit the opinion because [Dr. Rocha] was not a treating physician and Dr. Rocha's

opinion was inconsistent with the ALJ's own credibility findings."  Plaintiff's Brief at 18.  It

is axiomatic that an examining source without a treating relationship was not a treating

physician.  Here, the ALJ did not point to the lack of a treating relationship as a reason for

giving Dr. Rocha's opinion evidence only "some weight;" he pointed to the lack of any

treatment notes to support the extent of Plaintiff's disability, or reported limitations, as

stated in Dr. Rocha's report.  The Court's independent review of the record finds substantial

evidence supports this finding.  For example, there are no treatment notes indicating

Plaintiff can only occasionally lift and carry less than ten pounds and can rarely carry ten

pounds, but never lift and carry any greater weight.  In fact, Plaintiff's own statements belie

this finding (*see* Tr. 305, Clinical Evaluation and Mental Status report by Dr. Peter Knox).

Additionally, no treatment notes report findings that Plaintiff would frequently "experience

symptoms severe enough to interfere with attention and concentration needed to perform

even simple work tasks" (*see* Tr. 378).                         Furthermore, contrary to Plaintiff's

argument, the testing performed by Dr. Rocha does not establish a disability under Listing

2.03.  It appears from the limited medical note that Dr. Rocha performed confrontation

testing[11] to determine Plaintiff only had twenty (20) percent of her visual fields available

---

[11]Confrontation testing tests the field of vision by means of the eye doctor sitting
directly in front of you, having you to cover one eye, you look directly at your eye doctor
while he or she moves his or her hand in and out of your visual field and you tell your doctor
when  you  can  see  his  or  her  hand  or  fingers.  *See*

bilaterally (*see* Tr. 377).  Plaintiff's Brief at 8.  Plaintiff's brief states Dr.  Rocha performed

confrontation testing.  Plaintiff's Brief at 1.  However, Defendant correctly points out that the

Social Security Administration will not use the results of confrontation tests to determine

whether an impairment meets or medically equals a listing.[12]  20 C.F.R. pt.  404, subpt p,

App.  1, Listing 2.00(A)(6)(a)(ix).  Therefore, the ALJ consideration of Dr. Rocha's testing

results was proper; he specifically explained that he gave Dr. Rocha's report some weight

and why he did not give her conclusions any greater weight (Tr.  21).  To have found Dr.

Rocha's report was evidence that Plaintiff met or equaled a Listing would have been

improper.[13]  *See* n. 11, *supra*.

## III. Full and Fair Record

As Plaintiff notes, an ALJ has a duty to develop the record where appropriate, but

is not required to order a consultative examination as long as the record contains sufficient

evidence for the ALJ to make an informed decision.  *See* Plaintiff's Brief at 11-12; *Ingram*

*v.  Comm'r of Soc.  Sec.,* 496 F.3d 1253, 1269 (11th Cir. 2007).  Here, there was evidence

within the record that permitted the ALJ to make an informed decision.   In fact, there is

---

http://www.mayoclinic.com/health/eye-exam/MY00245/DSECTION=what-you-can-expect
(last visited Sept. 19, 2012).

[12]20 C.F.R. pt.  404, subpt p, App.  1, Listing 2.00(A)(6)(a)(ix) provides in pertinent
part  "We will not use the results of visual field screening tests, such as confrontation tests,
tangent screen tests, or automated static screening tests, to determine that your
impairment meets or medical equals a listing, or functionally equals the listings.  However,
we can consider normal results from visual field screening tests to determine whether your
visual disorder is severe when these test results are consistent with the other evidence in
your case record."

[13]In light of the findings set forth in Sections I and II of the Analysis, the Court finds
it unnecessary to address Defendant's argument concerning the distinction between visual
field efficiency and visual fields.  See Defendant's Brief at 6-8.

substantial evidence to support the ALJ's conclusion that Plaintiff's condition did not meet or equal a Listing, including acceptable testing by Plaintiff's treating physician with normal results.

According to Dr. Donna Hill's record dated 5/29/07, Goldmann visual fields were performed on Plaintiff on 5/13/2007 (Tr. 250-51). The results were full visual fields in both eyes (Tr. 250). Results of Goldmann visual fields are acceptable evidence to support a finding of an impairment that meets Listing 2.03. *See* 20 C.F.R. pt. 404, subpt p, App. 1, Listing 2.00(A)(6)(a)(viii). Although this testing was completed before Plaintiff's alleged onset date of August 30, 2008, those results were submitted by Plaintiff and were part of the record considered by the ALJ. The ALJ was not required to order additional testing. It was Plaintiff's burden to establish her condition met the Listing by providing test results accepted by the Social Security Administration and Plaintiff failed to provide such evidence. The ALJ properly found Plaintiff did not meet a Listing and continued with the sequential step analysis.

Thus, the Court agrees with Defendant that Plaintiff has not met her burden of demonstrating her condition meets or equals an impairment Listing during the relevant period, and there is substantial evidence in the record to support the ALJ's decision.

## CONCLUSION

For the foregoing reasons, the undersigned finds the decision of the ALJ that Plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence. The Commissioner's decision is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with

this Order and Opinion and, thereafter, to close the file.  Each party shall bear its own costs.

      **DONE AND ORDERED** at Jacksonville, Florida this <u>20th</u> day of September, 2012.


THOMAS E. MORRIS
United States Magistrate Judge


Copies to all counsel of record